UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDEPENDENT TRUST CORPORATION, an Illinois corporation now in receivership, Plaintiff, v. STEWART INFORMATION SERVICES CORPORATION, a Delaware corporation; STEWART TITLE GUARANTY COMPANY, a Texas corporation; and STEWART TITLE COMPANY, a Texas corporation, Defendants. | No. 10 C 4430<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Independent Trust Corporation ("InTrust"), by its receiver Pricewaterhouse Coopers LLP ("PwC"), brought suit against Defendants, Stewart Information Services Corporation ("SISCO"), Stewart Title Guaranty Company ("STG") and Stewart Title Company ("Stewart Title") (collectively, "Stewart"). InTrust's claims relate to a fraud scheme perpetrated by the Intercounty Title Insurance Company of Illinois ("Intercounty"), a company with various ties to Stewart. Before the Court is Stewart's Motion to Dismiss.

### BACKGROUND

The following background is taken from Plaintiff's Complaint and is assumed to be true for purposes of this motion.

A ponzi scheme was perpetrated by Laurence Capriotti and Jack Hargrove in the 1980s and 1990s. Capriotti and Hargrove were owners and officers of Intercounty, which was in the business of issuing title insurance policies and providing real estate closing services. As part of

the business, Intercounty created and managed an escrow account. Beginning in 1986, Intercounty illegally invested escrow funds in junk bonds in an attempt to increase earnings. Intercounty lost money on its junk bond investment, and by 1989 Intercounty was left with a $25.8 million shortfall in its escrow account. To avoid disclosing these losses, Intercounty operated its escrow account "on the float," using money from new transactions to pay off earlier escrowers.

SISCO, STG and Stewart Title are in the business of underwriting title insurance in connection with real estate transactions.[1] Beginning in 1984, Intercounty served as STG's agent in and around Chicago, Illinois. Stewart Title also contractually agreed to insure escrow funds that Intercounty managed as STG's agent. Additionally, Stewart Title had a twenty percent ownership interest in Intercounty. Stewart was aware of Intercounty's investment in junk bonds and its subsequent losses. Stewart allowed Intercounty to fire its independent auditors so that Intercounty's losses and scheme to run the escrow account on the float would not be detected.

At this time, Capriotti and Hargrove were also directors of InTrust, which was the trustee for nearly 20,000 trust accounts, primarily individual retirement accounts, collectively valued at over $1 billion. Hargrove also had an ownership interest in InTrust. To cover the shortfall in Intercounty's escrow account, Capriotti and Hargrove caused InTrust to transfer tens of millions of dollars of InTrust account-holder funds to Intercounty. Intercounty used the transferred funds to pay amounts owed from its escrow account. Had Intercounty not been able to make these payments, Stewart, as insurer of funds escrowed in connection with STG transactions, would

---

[1] SISCO is a publicly held corporation. STG is a wholly owned subsidiary of SISCO. Stewart Title is a wholly owned subsidiary of STG.

have had to cover the losses. Intercounty also used the funds from InTrust to pay insurance premiums and other fees to Stewart. Between December 1990 and the end of 1995, $40.9 million in InTrust account-holder funds were transferred to the Intercounty escrow to cover the losses Stewart had been paid to insure. As much as $27 million of InTrust account-holder funds were transferred directly to Stewart or to third parties for Stewart's benefit.

In 1994, the Illinois Commissioner of the Office of Banks and Real Estate ("OBRE") began investigating InTrust's relationship with Intercounty. However, it was not until February 2000 that the OBRE learned that the funds InTrust had transferred to Intercounty were actually missing. On April 14, 2000, the OBRE took control of InTrust and placed it in receivership. PwC was appointed as receiver. PwC, on behalf of InTrust, pursued civil suits against Capriotti, Hargrove, Intercounty and ITI Enterprises, Inc., a company Hargrove and Capriotti had set up. PwC obtained judgment against all defendants in the amount of $68 million. Although the judgment against Hargrove was overturned on appeal, PwC later settled its claim against Hargrove for $50 million.

In 2003, Capriotti and Hargrove were indicted in federal court. Capriotti pled guilty to a four-count federal indictment in June 2005, admitting, *inter alia*, that he and Hargrove participated in a scheme to defraud InTrust. In September 2005, following a five-week jury trial, Hargrove was convicted on ten counts of a superseding indictment, which included allegations that Hargrove had participated in a scheme to defraud InTrust.

On July 15, 2010, PwC, on behalf of InTrust, filed the instant five-count Complaint against Stewart. PwC brings claims for Money Had and Received (Count I), Unjust Enrichment

(Count II), Vicarious Liability for Intercounty's Tortious Conduct (Count III), Aiding and Abetting Breach of Fiduciary Duty (Count IV) and Conspiracy (Count V).

## ANALYSIS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S. 544, 127 S. Ct. at 1965, 1973 n. 14).

Stewart moves to dismiss based, in part, on the statute of limitations, which it claims has long since run. A statute-of-limitations argument is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Thus, a plaintiff need not plead facts to defeat it in the complaint. *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). However, when a complaint sets out all the elements of a defense, a 12(b)(6) motion should be granted. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

4

The parties entered into a series of agreements that tolled the statute of limitations from October 12, 2001, through the date the Complaint was filed. Thus, the question is whether InTrust's claims were time barred by October 12, 2001. Stewart argues, without objection, that the five-year statute of limitations set out in 735 ILCS 5/13-205 applies to all of InTrust's claims. Stewart also argues, again without objection, that the acts giving rise to InTrust's claims occurred no later than August 1996. Thus, applying the five-year statute of limitations, InTrust's claims were time-barred by August 2001 – before the parties entered into the tolling agreements – unless that statute was tolled for some other reason.

According to InTrust, the statute of limitations was tolled at all times before April 14, 2000, by the doctrine of adverse domination. Adverse domination tolls the statute of limitations on claims by a corporate plaintiff so long as the corporation is controlled by the claimed wrongdoers. *Resolution Trust Corp. v. Chapman*, 895 F.Supp. 1072, 1075 (C.D. Ill. 1995). "The rationale for this principle is that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests." *Federal Deposit Ins. Corp. v. Greenwood*, 739 F.Supp. 450, 453 (C.D. Ill. 1989). The Complaint alleges that InTrust was under the adverse domination of directors Hargrove and Capriotti until April 14, 2000.

Stewart raises a number of arguments against the application of adverse domination. One of these is that the doctrine cannot apply here because InTrust has not alleged a conspiracy between *Stewart* and the wrongdoing InTrust directors. Stewart argues that adverse domination tolls only claims against wrongdoing officers and directors – not claims against third parties (in this case, Stewart). For claims against third parties to be tolled, Stewart argues, the third party

5

must have been actively involved in the illegal conduct of the wrongdoing directors. InTrust argues to the contrary, that claims against even innocent third parties are tolled under the doctrine, so long as the claims are such that the wrongdoing directors would not have brought them out of fear of exposing their wrongful acts.

The sole Illinois court opinion to address the doctrine of adverse domination is *Lease Resolution Corporation v. Larney*, 308 Ill. App. 3d 80 (1 Dist. 1999) (*Larney*).[2] The *Larney* Court, recognizing that no Illinois court had previously addressed adverse domination, analyzed whether the doctrine was a logical extension of the Illinois "discovery rule."[3] *Id*. at 86.

The *Larney* court described the doctrine as follows: "Adverse domination is an equitable doctrine that tolls the statute of limitations for claims by a corporation *against its officers and directors* while the corporation is controlled by *those* wrongdoing officers or directors." *Id*. (emphasis added). Thus, the doctrine, as set out by the court, applied only to claims against wrongdoing officers and directors of the plaintiff corporation. Further, the court states, "the adverse domination doctrine . . . teaches that if a director takes an action that harms the corporation and the corporation is unaware of the action, the statute of limitations will not bar the corporation from recovering *from the director*." *Id*. at 87-88 (emphasis added). And further: "Generally, the adverse domination doctrine tolls the statute of limitations so long as the

---

[2] The parties cite a number of cases from different states in support of their positions with respect to adverse domination. However, as both sides agree that Illinois law controls the resolution of the issue, to the extent that cited cases differ from Illinois law, they are neither controlling nor persuasive.

[3] The discovery rule tolls the statute of limitations "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Larney*, 308 Ill. App. 3d at 86 (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72 (1995)).

corporation remains under the control of the same wrongdoers *against whom the cause of action exists*." *Id*. at 89 (emphasis added). Thus, according to the only Illinois authority, *Larney*, the adverse domination doctrine applied only to claims against the wrongdoing officers and directors.

However, the *Larney* court also considered whether the doctrine could, in some circumstances, apply to claims against non-board members. That certain defendants were not members of the board, the court held, "[did] not automatically render the adverse domination doctrine inapplicable." *Id*. at 89. Noting that "[t]he rationale behind the adverse domination doctrine applies equally to causes of action against co-conspirators," the court held that the doctrine "toll[s] the statute of limitations for a cause of action by a corporation against a non-board-member coconspirator of the wrongdoing board members." *Id*. at 90. Thus, under Illinois law, the scope of the adverse domination doctrine is clear. The doctrine tolls only those claims made against wrongdoers on the board of the injured corporation and their non-board-member coconspirators.

InTrust's attempts to avoid *Larney*'s holding are not persuasive. First, InTrust attempts to rewrite the holding by omitting key language from its quotations of the case. InTrust first cites *Larney* to explain that "[u]nder the Illinois doctrine of 'adverse domination,' statutes of limitation are tolled for claims by a corporation while the corporation is controlled by 'wrongdoing officers and directors.'" Resp. at 2 (citing *Larney*, 308 Ill. App. 3d at 86). Omitted by InTrust from this passage (cited above) was *Larney*'s statement that the claims at issue were those "by a corporation against its officers and directors." *Larney*, 308 Ill. App. 3d at 86. InTrust next quotes *Larney* to argue that "adverse domination applies in any case where 'control

of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to . . . initiate action *contrary to their own interests*." Resp. at 4 (quoting *Larney*, 308 Ill. App. 3d at 86) (emphasis added in Response Brief).  Omitted by the ellipsis were the words "to sue themselves." *Larney*, 308 Ill. App. 3d at 86.  Thus, the full, unaltered quote confirms the tolling of the statute of limitations on a corporation's suit against the wrongdoers on the board.

InTrust goes on to twice substitute "third party" for *Larney*'s "nonboard-member co-conspirator" language.  InTrust, citing *Larney*, asserts "[t]he doctrine has been extended to suits against both the wrongdoing directors and third parties . . . ." Resp. at 4 (citing *Larney*, 308 Ill. App. 3d at 89).  The page cited by InTrust does not mention "third parties"; rather, it discusses "co-conspirators."  InTrust states, "a board controlled by wrongdoers will not sue third parties if 'such action would necessarily bring to light its own wrongdoing.'" Resp. at 4 (quoting *Larney*, 308 Ill. App. 3d at 90).  The full quoted passage states, "Just as a board comprised of a majority of wrongdoers could not be expected to file suit against itself, such a board could not be expected to file suit *against a nonboard-member co-conspirator* because such action would necessarily bring to light its own wrongdoing and would be adverse to its own interests." *Larney*, 308 Ill. App. 3d at 89-90 (emphasis added).

Finally, InTrust disputes Stewart's reading of *Larney* that "the adverse domination doctrine can only be invoked against non-board members who conspired with wrongdoing board members." Resp. at 6.  InTrust states, "The case says nothing of the sort." *Id*.  This statement by InTrust is misleading, to say the least, considering that *Larney* states exactly that:  "We find that the adverse domination doctrine applies to toll the statute of limitations for a cause of action by a

corporation against a nonboard-member co-conspirator of the wrongdoing board members." *Larney*, 308 Ill. App. 3d at 90. InTrust goes on to argue that *Larney* held that "adverse domination tolling extends to *any action* that would 'bring to light [the board's] own wrongdoing and would be adverse to its own interests.'" Resp. at 6 (quoting *Larney*, 308 Ill. App. 3d at 90) (emphasis added). But *Larney* did not extend adverse domination tolling to *any* action. As set out above, it extended the doctrine only to claims against non-board member *coconspirators*. *Larney*, 308 Ill. App. 3d at 90. InTrust's assertion to the contrary is unsupported.

Finally, InTrust suggests that Stewart was a coconspirator of the wrongdoers on InTrust's board. InTrust asserts that the Complaint "alleges that Capriotti and Hargrove's domination of InTrust prevented the company from asserting claims against them and their *Stewart co-conspirators*." Resp. at 3 (citing Compl. ¶¶ 156-173) (emphasis added). Thought it applies the label of coconspirator to Stewart, InTrust's brief contains no reference to specific allegations in the Complaint in support of that conclusion. The cited paragraphs of the Complaint contain no allegations of conspiracy between InTrust's board and Stewart to support this conclusion.

For the foregoing reasons, the adverse domination doctrine, as applied in Illinois, does not operate to toll the statute of limitations in this case. InTrust does not dispute that, but for such tolling, the limitations period ran on InTrust's claims, at the latest, in August 2001. Thus, the statute of limitations expired on all of InTrust's claims before the parties entered into their first tolling agreement on October 12, 2001. InTrust's Complaint is, therefore, dismissed with prejudice. *See Atkins v. Coca Cola Enterprises, Inc.*, 2007 WL 4219196, at *1 (N.D. Ill. Nov. 28, 2007) (dismissal with prejudice appropriate where statute of limitations has run); *Firth v. Yahoo! Inc.*, 2010 WL 2696286, at *2 (N.D. Ind. July 2, 2010).

9

## CONCLUSION

Because the statute of limitations has run on all of InTrust's claims, Stewart's Motion to Dismiss is granted. InTrust's Complaint is dismissed with prejudice.

Dated: 2/7/11

_____
JOHN W. DARRAH
United States District Court Judge