UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDEPENDENT TRUST CORPORATION, an Illinois corporation now in receivership, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 10-cv-4430<br>)<br>) Judge John W. Darrah |
| STEWART INFORMATION SERVICES CORPORATION, a Delaware corporation; STEWART TITLE GUARANTY COMPANY, a Texas corporation; and STEWART TITLE COMPANY, a Texas corporation, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Independent Trust Corporation ("InTrust"), by its receiver Pricewaterhouse Coopers LLP ("PwC"), has filed a Motion to Alter or Amend This Court's February 7, 2011 Judgment Granting Stewart's Motion to Dismiss the Receiver's Complaint with Prejudice pursuant to Fed. R. Civ. P. 59(e). This case was dismissed with prejudice on that date because all of InTrust's claims were barred by the statute of limitations. For the reasons set forth below, InTrust's motion is denied.

### BACKGROUND

On July 15, 2010, PwC, on behalf of InTrust, filed a five-count Complaint against Defendants, Stewart Information Services Corporation ("SISCO"); Stewart Title Guaranty Company ("STG"); and Stewart Title Company ("Stewart Title") (collectively, "Stewart"). InTrust's claims related to a fraud scheme perpetrated by the Intercounty

Title Insurance Company of Illinois ("Intercounty"), a company with various ties to Stewart. The Court's February 7, 2011 Memorandum Opinion and Order sets forth the procedural history and facts surrounding this lawsuit; thus, they need not be recited in their entirety in this opinion. *See Independent Trust Corp. v. Stewart Information Services Corp.*, No. 10-cv-4330, 2011 WL 529390, at *1-2 (N.D. Ill. Feb. 7, 2011) (*Independent Trust*). A summary of the facts alleged in the Complaint is recited here to provide context for this ruling.

In the 1980s and 1990s, Laurence Capriotti and Jack Hargrove were owners and officers of Intercounty, which was in the business of issuing title insurance policies and providing real estate closing services. Capriotti and Hargrove used Intercounty to perpetrate a ponzi scheme, which entailed Intercounty's, beginning in 1986, illegally investing escrow funds in junk bonds in an attempt to increase earnings. By 1989 Intercounty was left with a $25.8 million shortfall in its escrow account. To avoid disclosing these losses, Intercounty operated its escrow account "on the float," using money from new transactions to pay off earlier escrowers.

SISCO, STG and Stewart Title are in the business of underwriting title insurance in connection with real estate transactions. Beginning in 1984, Intercounty served as STG's agent in and around Chicago, Illinois. Stewart Title also contractually agreed to insure escrow funds that Intercounty managed as STG's agent. Additionally, Stewart Title had a twenty percent ownership interest in Intercounty. Stewart was aware of Intercounty's investment in junk bonds and its subsequent losses. Stewart allowed

Intercounty to fire its independent auditors so that Intercounty's losses and scheme to run the escrow account on the float would not be detected.

At this time, Capriotti and Hargrove were also directors of InTrust, which was the trustee for nearly 20,000 trust accounts, primarily individual retirement accounts, collectively valued at over $1 billion. Hargrove also had an ownership interest in InTrust. To cover the shortfall in Intercounty's escrow account, Capriotti and Hargrove caused InTrust to transfer tens of millions of dollars of InTrust account-holder funds to Intercounty. Intercounty used the transferred funds to pay amounts owed from its escrow account. Had Intercounty not been able to make these payments, Stewart, as insurer of funds escrowed in connection with STG transactions, would have had to cover the losses. Intercounty also used the funds from InTrust to pay insurance premiums and other fees to Stewart. Between December 1990 and the end of 1995, $40.9 million in InTrust account-holder funds were transferred to the Intercounty escrow to cover the losses Stewart had been paid to insure. As much as $27 million of InTrust account-holder funds were transferred directly to Stewart or to third parties for Stewart's benefit.

In 1994, the Illinois Commissioner of the Office of Banks and Real Estate ("OBRE") began investigating InTrust's relationship with Intercounty. However, it was not until February 2000 that the OBRE learned that the funds InTrust had transferred to Intercounty were actually missing. On April 14, 2000, the OBRE took control of InTrust and placed it in receivership. PwC was appointed as receiver. PwC, on behalf of InTrust, pursued civil suits against Capriotti, Hargrove, Intercounty and ITI Enterprises, Inc., a company Hargrove and Capriotti had set up. PwC obtained judgment against all

3

defendants in the amount of $68 million. In 2005, Capriotti pled guilty and Hargrove was convicted of a scheme to defraud InTrust in federal criminal prosecutions.

On July 15, 2010, InTrust filed a Complaint against Stewart, alleging claims for Money Had and Received (Count I), Unjust Enrichment (Count II), Vicarious Liability for Intercounty's Tortuous Conduct (Count III), Aiding and Abetting Breach of Fiduciary Duty (Count IV), and Conspiracy (Count V). On September 15, 2010, Stewart filed a motion to dismiss based, in part, on the statute of limitations. InTrust argued that the doctrine of adverse domination tolled the statute of limitations until April 14, 2000, when InTrust was placed in receivership. Following a review of InTrust's Complaint, the parties' briefs and the governing case law on February 7, 2011, the Court granted Stewart's motion to dismiss because all of InTrust's claims were barred by the statute of limitations. The Court addressed the doctrine of adverse domination in detail and held that the doctrine did not apply to toll InTrust's claims. On February 16, 2011, InTrust filed the motion before the Court pursuant to Rule 59(e) to alter or amend the Court's Opinion. In the alternative, InTrust requests that the February 7, 2011 judgment be vacated, and InTrust be granted leave to file an amended complaint.

## ANALYSIS

"The only grounds for a Rule 59(e) motion . . . are newly discovered evidence, an intervening change in the controlling law, and manifest error of law [or fact]." *Local 73, Serv. Employees Int'l Union v. Argonne Nat'l Lab.*, No. 05 C 2772, 2006 WL 695532, at *2 (N.D. Ill. Mar. 13, 2006) (*Local 73*) (quoting *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998)). A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the

4

pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted). "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). The movant must "clearly establish" grounds for setting aside the judgment. *Local 73*, 2006 WL 695532, at *2 (citing *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)).

InTrust does not base its motion on newly discovered evidence or an intervening change in controlling law. Instead, InTrust's motion makes two arguments — the first is that the Court committed a manifest error of fact, and the second is that the Court committed a manifest error of law.[1] First, InTrust argues that the Opinion was based on a

---

[1] That InTrust has filed a Rule 59(e) motion that more or less regurgitates its arguments from the motion to dismiss briefing is not surprising. InTrust's Complaint is essentially its last gasp in a marathon of civil litigation. A brief summary of the criminal and civil litigation that relates to this case is as follows. In June 2005, Capriotti pled guilty to participating with Hargrove in a scheme to defraud, among others, InTrust, STG, and Fidelity, and misusing Intercounty escrow funds. (Compl. ¶ 152.) Capriotti's plea agreement refers to multiple instances in which the former InTrust and Intercounty principals deliberately manipulated records to conceal escrow deficiencies from STG. (Dkt. No. 23, Ex. A at 15.) In September 2005, a jury convicted Hargrove on ten counts, including a finding that Hargrove participated in a scheme to defraud, among others, InTrust, STG, and Fidelity. (Compl. ¶ 153.) Around the time InTrust and Intercounty collapsed in 2000, Fidelity filed *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, No. 00-cv-5658, 2008 WL 4348594, at *1 (N.D. Ill. Mar. 26, 2008) (*Fidelity*), against Intercounty, Capriotti, Hargrove, INTIC and numerous others, including SISCO, STG, and Stewart Title, making similar allegations as InTrust makes in its Complaint here. In 2008, Judge Norgle granted SISCO, STG and Stewart Title's motion for summary judgment on all remaining claims, finding: "Intercounty and its executives did whatever they could to keep Stewart in the dark regarding any escrow account deficiencies at . . . Intercounty." *Id.* at *6. In 2005, the Receiver filed

misunderstanding of InTrust's allegations in its Complaint. (Pl.'s Mot. at 3.) Pursuant to *Lease Resolution Corp. v. Larney*, 308 Ill. App. 3d 80 (1st Dist. 1999) (*Larney*), the adverse domination doctrine may be applied to toll two categories of claims: (1) claims by an injured corporation against its wrongdoing officers and directors; and/or (2) claims by an injured corporation made against non-board-member coconspirators of its wrongdoing officers and directors. *See Independent Trust*, 2011 WL 529390, at *4. This case fell into the second category of claims. InTrust brought suit against Stewart and argued that the adverse domination doctrine operated to toll its claims because there was a conspiracy between InTrust's Board and Stewart. However, as the Opinion holds, the adverse domination doctrine does not apply because InTrust did not allege a conspiracy between InTrust's Board and Stewart. *Id.* at *5.

To succeed in a claim of civil conspiracy under Illinois law, the plaintiff must establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102 (1999)). "An agreement is a necessary and important element of this cause of action." *Id.*

---

*Independent Trust Corp. v. Fidelity Nat. Title Ins. Co. of New York*, 577 F. Supp. 2d 1023 (N.D. Ill. 2008), seeking $68 million based on Fidelity's relationship from 1995 through 2000 with Intercounty, Capriotti, and Hargrove, making claims that were similar to those made against Stewart in the instant Complaint. On August 26, 2008, Judge Pallmeyer granted summary judgment for Fidelity on InTrust's remaining claims. *Id.* at 1037-52.

In its instant motion, InTrust argues it established a "conspiracy between Intercounty, by and through InTrust's controlling directors Capriotti and Hargrove, and Stewart." (Pl.'s Mot. at 5.) Therefore, InTrust argues, the Opinion's conclusion — that InTrust's Complaint contains no allegations of conspiracy between In Trust's Board and Stewart — was based on a misunderstanding of InTrust's allegations. In support, InTrust cites to numerous paragraphs of its Complaint that it failed to cite in briefing the motion to dismiss. InTrust now attempts to recharacterize its Complaint by advancing an argument it also failed to make in its brief opposing Stewart's motion to dismiss. A motion pursuant to Rule 59(e), however, cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *see also Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.").

Even if InTrust's new characterization of its Complaint is considered, InTrust has not demonstrated that the Court committed a manifest error of fact in analyzing and dismissing InTrust's Complaint. As set out in the Order and Opinion dismissing InTrust's Complaint (*see* 2/7/11 Opinion), InTrust's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if

they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In reaching its decision to grant Stewart's motion to dismiss, the Court considered InTrust's Complaint, in its entirety, and the parties' briefing with respect to Stewart's motion to dismiss. Plaintiff's Complaint is 90 pages in length with 214 paragraphs: nowhere, including the paragraphs cited in InTrust's instant motion and those cited in its opposition brief, (*see* Dkt. No. 29), does InTrust allege a conspiracy between InTrust's Board and the Stewart defendants pursuant to the pleading requirement set out above.

Moreover, the Complaint specifically alleges that Stewart *did not* have knowledge of Intercounty's improper business dealings (*see* Compl. ¶¶ 141, 144) and that Intercounty obfuscated Stewart's auditor's efforts to conduct an audit. (*See* Compl. ¶ 147.) These allegations clearly demonstrate that there could be "no meeting of the minds"; and therefore, there was no agreement between Intercounty and Stewart — a material element to pleading a conspiracy. *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) ("To show a civil conspiracy, [plaintiff] must show an agreement to accomplish either an unlawful purpose or a lawful purpose by unlawful means."); *cf. Fidelity*, 2008 WL 4348594, at *1 ("Intercounty and its executives did whatever they could to keep Stewart in the dark regarding any escrow account deficiencies at . . . Intercounty.").

The InTrust Complaint also alleges that "even if Intercounty's misconduct was not within the actual or implied authority granted by Stewart, Stewart ratified

8

Intercounty's conduct vis-à-vis InTrust by accepting the benefits of InTrust's deposits" and that "Stewart's ratification can be inferred from the surrounding circumstances. For example, a principal's ignorance or mistake about an agent's misconduct that is the result of gross or culpable negligence in failing to learn the facts will be stopped from disclaiming agency if he had full knowledge of the facts." (Compl. ¶ 194.) But InTrust must show that Stewart "knowingly and voluntarily participated in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Id.* "Proof of accident or negligence is not enough." *Id.* Therefore, these allegations fall short of pleading a conspiracy between Intercounty and Stewart if they do not actually negate the necessary elements of a conspiracy. InTrust may state a theory of recovery based on a theory of passive negligence, but its Complaint does not plead a conspiracy for the purpose of invoking the adverse domination doctrine to toll the application of the statute of limitations. Therefore, as the Opinion held, the adverse domination does not apply to toll InTrust's claims against Stewart. InTrust has not established a manifest error of fact that changes that conclusion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 2005).

Second, InTrust argues, in the alternative, that the Court committed an error of law because it dismissed InTrust's Complaint with prejudice. Here, InTrust's proposed amendments (*see* Pl.'s Mot. at 6) seek only to expand the allegations of its dismissed complaint; this does not merit alteration of the Court's judgment. *See Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995) ("[T]he mere desire to expand the allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment."). "[T]he

decision to dismiss with or without prejudice is left to the sound discretion of the court." *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000). Here, InTrust's Complaint was dismissed with prejudice because it was barred by the five-year statute of limitations. As noted in the Opinion, the parties did not dispute that the acts giving rise to InTrust's claims occurred no later than August 1996. *Independent Trust*, 2011 WL 529390, at *3. Thus, because the adverse domination doctrine does not apply to the Complaint as pled, InTrust's claims were time-barred by August 2001. When a complaint fails to survive the statute of limitations, the dismissal of the complaint with prejudice is appropriate. *See e.g., Kamelgard v. Macura*, 585 F.3d 334, 344 (7th Cir. 2009) (holding that lawsuit was time-barred and modifying district court's judgment so that the suit is dismissed with prejudice); *DeJesus v. Jeschke,* No. 02-CV-1685, 2002 WL 1400532, at *2 (N.D. Ill. June 27, 2002) ("[I]f the statute of limitations for the underlying action has expired, the court may . . . in its discretion dismiss with prejudice.").[2]

"A complaint should only be dismissed if there is no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (affirming district court's dismissal of plaintiff's complaint); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) ("A court may dismiss a complaint only if it is clear that no

---

[2] InTrust's citation of *Foster v. DeLuca*, 545 F.3d 582 (7th Cir. 2008) (*Foster*), to support its argument that district courts generally dismiss a plaintiff's complaint without prejudice and give plaintiff at least one opportunity to amend its complaint, is inapposite. (Pl.'s Mot. at 6.) By contrast to *Foster*, this case involves the expiration of the statute of limitations on InTrust's claims. Furthermore, here, by contrast to *Foster*, InTrust's instant motion was not subject to a cursory dismissal. *Compare id.* at 584-85. InTrust's motion was fully briefed and the parties' arguments were fully considered before ruling.

relief could be granted under any set of facts that could be proved consistent with the allegations."). In this case, there is no set of facts consistent with IntTrust's allegations in the Complaint that would entitle it to relief. Simply put, InTrust must plead a conspiracy in order to toll the statute of limitations; otherwise, its Complaint is time barred. As set forth above, it has failed to do so. Rather, many of InTrust's allegations undermine its attempts at pleading a conspiracy. *See Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995) ("Although Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff's complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by going beyond the bare minimum, a plaintiff may plead herself out of court.").

## CONCLUSION

A motion for relief from the judgment under Rule 59 is an extraordinary remedy "reserved for the exceptional case." *Foster*, 545 F.3d at 584 (citing *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). InTrust has not demonstrated this to be an exceptional case and has failed to demonstrate any newly discovered evidence or manifest error of law or fact that would merit upsetting the finality of judgment. InTrust's Rule 59(e) Motion to Alter or Amend This Court's February 7, 2011 Judgment Granting Stewart's Motion to Dismiss the Receiver's Complaint with Prejudice is denied.

Date: 5-11-11

JOHN W. DARRAH
United States District Court Judge

11